**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CRIMINAL ACTION** |
| v. ) | |
| ) | **No. 13-20063-01-JWL** |
| **JOHN D. HUDSON,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's <u>Renewed Motion To Invoke Privilege As To Psychotherapist-Patient Records</u> (Doc. #63) filed August 16, 2013. Defendant asserts that certain documents are protected by the psychotherapist-patient privilege, attorney-client privilege or physician-patient privilege. These documents are attached to the <u>Government's Response To Defendant's Invocation Of Privileges</u> (Doc. #69) filed August 19, 2013 and are bates numbered MD 000001-000081 (Exhibit 1), A/C 000002-000112 (Exhibit 2), KPF 000001-000156 (Exhibit 3) and COMP 000001-000141. On September 4, 2013, the Court ruled that as to all documents which defendant disclosed to the Confidential Informant in connection with his application for disability benefits with the Kansas Public Employees Retirement System ("KPERS"), defendant has waived the psychotherapist-patient privilege and the "common-interest" exception does not otherwise protect these documents. <u>Order</u> (Doc. #106). Consistent with the Court's ruling, the AUSA who is assigned to the privilege issue disclosed to government trial counsel the following Bates numbered documents: MD 000001-33, 36, 39, 42, 45-65, and 66-81; KPF 000001-3, 16-21, 25-26, 29-62, 68-91, 94-95, and 103-04; and COMP 000016-27 and 33-139. <u>See</u> <u>Notice Of Disclosure</u> (Doc. #107) filed September 4, 2013. This <u>Memorandum And Order</u> sets forth the reasons for the Court's

rulings on privilege in its prior order and sets forth the rulings on the remaining issues which were raised by defendant's renewed motion to invoke privilege.

**Analysis**

The Court applies federal common law to resolve defendant's assertion of privilege. See Fed. R. Evid. 501. The Supreme Court has cautioned that evidentiary privileges contravene the fundamental principle that the public has a right to every man's evidence. Trammel v. United States, 445 U.S. 40, 50 (1980) (citation omitted). Accordingly, the Court strictly construes evidentiary privileges and accepts them only to the very limited extent that excluding relevant evidence "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Id. (quotation and citation omitted).

**I.  Psychotherapist-Patient Privilege**

Defendant again argues that his statements to a female Confidential Informant ("CI") about his application for disability benefits to the Kansas Public Employees Retirement System including the documents which he submitted to the CI are protected by the psychotherapist-patient privilege. A psychotherapist-patient testimonial privilege applies to "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." Jaffee v. Redmond, 518 U.S. 1, 15 (1996); see United States v. Romo, 413 F.3d 1044, 1047 (9th Cir. 2005).

Defendant maintains that his statements to the CI and the documents which he disclosed to her relating to the application and report which was submitted to KPERS are privileged because she was acting in the role of therapist. See Renewed Motion To Invoke Privilege As To Psychotherapist-Patient Records (Doc. #63) filed August 16, 2013 at 4; see also Sealed Reply To Government's Response Re: Privilege (Doc. #76) filed August 23, 2013 at 11 (CI gave "clinical

advice concerning his disability claim, advice delivered by her own admission from a diagnostic perspective"). Judge Vratil previously rejected defendant's assertion of privilege as follows:

> The record contains no evidence that the CI intended to diagnose or treat defendant, or that he expected her to do so. The record reveals only a close personal relationship – and not a psychotherapist-patient relationship – between the CI and defendant. Defendant may have expected his statements to her to remain confidential, but he has not shown that his expectations were legally protected because his statements were in the course of diagnosis or treatment. The CI did not testify why she thought that defendant expected his communications with her would remain confidential, and she certainly did not imply that any such expectation was based on a professional relationship, or because she was providing diagnosis or treatment. In sum, defendant has presented no credible evidence that his statements to the CI were in the course of psychiatric diagnosis or treatment.

Memorandum And Order (Doc. #62) filed August 14, 2013 at 1-2. In addition, throughout his disability application, defendant referred to his three diagnosing physicians, see, e.g., KPF 000020, KPF 000031 (Kathleen King, Phd, Grace Ketterman, MD and Fernando Rosso, MD), but did not refer to any diagnosis or treatment by the CI. As of July or August of 2012, defendant apparently referred to the CI as a "friend" who was helping him with the paperwork for his disability application. See Dr. King's treatment notes, KPF 000025 (defendant found it difficult to focus on paperwork for his disability application so he "asked for help from a friend unrelated to the police"). As Judge Vratil has noted, at most, defendant has shown that the CI was helping him with paperwork for his disability application – not that she was diagnosing or treating him. See United States v. Bolander, 722 F.3d 199, 223 (4th Cir. 2013) (privilege does not apply to communications with expert witness who is a psychotherapist because party sought assistance of expert to evaluate his medical condition, not to provide treatment); United States v. Ghane, 673 F.3d 771, 782 (8th Cir. 2012) (psychotherapist-patient privilege contemplates treatment; Jaffee extended privilege to licensed social workers who provide "actual mental health treatment"). The Court declines to revisit

Judge Vratil's ruling that defendant has not met his burden to show that he made any particular statements to the CI in the course of diagnosis or treatment.

In his reply, defendant argues that his statements to the CI relating to the KPERS report are privileged because the CI shared a "common interest" in helping defendant obtain disability benefits. Sealed Reply To Government's Response Re: Privilege (Doc. #76) at 12-13. The "common interest" doctrine normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party. Frontier Refining, Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 705 (10th Cir. 1998). When disclosure is necessary to accomplish the consultation or assist with the representation, as in the case of an interpreter, translator, or secretary, an exception to waiver preserves the privilege. In re Qwest Communications Int'l Inc. ("Qwest Communications"), 450 F.3d 1179, 1195 (10th Cir. 2006). Similarly, when the disclosure is to a party with a common interest, the "joint defense" or "common interest" doctrine provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case. Id. To invoke the common interest privilege, the two individuals must have an identical legal interest. See In re Pac. Pictures Corp., 679 F.3d 1121, 1127-28 (9th Cir. 2012) (shared desire to see same outcome in legal matter is insufficient to establish "common interest" or "joint defense" privilege); NL Indus., Inc. v. Commercial Union Ins. Co., 144 F.R.D. 225, 230-31 (D.N.J. 1992) (community of interest exists where different persons or entities have "an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice;" nature of interest must be identical, not similar) (quoting Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1172 (D.S.C. 1974)).

By extension, the psychotherapist-patient privilege may apply when a husband and wife seek mutual counseling. See Kamper v. Gray, 182 F.R.D. 597, 600 n.3 (E.D. Mo. 1998). Defendant has presented no evidence, however, that he and the CI sought such counseling.[1] The common-interest doctrine potentially could protect third-party services which are performed ancillary to diagnosis or treatment, cf. United States v. Davis, 636 F.2d 1028, 1043 (5th Cir. 1981) (accounting services performed ancillary to legal advice may be within attorney-client privilege), but defendant has not shown that the CI was consulted in this capacity or that she provided any ancillary services for one of his treating therapists.

Defendant also attempts to analogize his disclosure of documents to the CI to a situation where a client delivers documents to a third person to deliver to his attorney. See Blankenship v. Rowntree, 219 F.2d 597 (10th Cir. 1955) ("Memorandum prepared by client to supply her attorney with information was a 'privileged communication' inadmissible in evidence against client in action by third person, even though memorandum had been delivered by client to such third person to be sent to attorney."). In the context of the psychotherapist-patient privilege, defendant must show that he delivered documents to the CI so that she would forward them to his therapist. Defendant has presented no evidence to support such a theory.

In sum, defendant has not met his burden to show that his statements to the CI were protected

---

[1] Defendant cites several cases which set forth the principle that the presence of a client's spouse or relative at a meeting with an attorney does not automatically destroy the privileged nature of the communication. See Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984); United States v. Landof, 591 F.2d 36, 39 (9th Cir. 1978); United States v. Bigos, 459 F.2d 639, 643 (1st Cir. 1972); In re Horowitz, 841 N.Y.S.2d 826 (N.Y. Sur. 2007); Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co., 109 F.R.D. 12, 20-21 (D. Neb. 1985); O'Brien v. New England Mut. Life Ins. Co., 109 Kan. 138, 197 P. 1100, 1102 (1921). Absent evidence that the CI was present at one of defendant's therapy sessions, however, he cannot invoke this principle in the context of the physcotherapist-patient privilege.

under either the psychotherapist-patient or common interest privilege.

## II.    **Waiver Of Psychotherapist-Patient Privilege**

A patient may waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it. Bolander, 722 F.3d at 223; United States v. Hayes, 227 F.3d 578, 586 (6th Cir. 2000). An implied waiver may occur when the substance of therapy sessions is disclosed to unrelated third parties. Bolander, 722 F.3d at 223; see Hayes, 227 F.3d at 586 (patient can waive psychotherapist-patient privilege by disclosing substance of therapy sessions to unrelated third parties); see also United States v. Ryans, 903 F.2d 731, 741 n.13 (10th Cir. 1990) (attorney-client privilege lost if client discloses substance of otherwise privileged communication to third party). Here, the government asserts that defendant waived the psychotherapist-patient privilege as to all documents which he submitted to KPERS in support of his application.[2]

Defendant concedes that he placed his mental condition in issue when he applied for medical retirement before the KPERS disability board based on his diagnosis of Post Traumatic Stress Disorder, but he maintains that his waiver of privilege in that proceeding does not bar him from asserting the privilege in a separate criminal proceeding. Defendant essentially argues that as part of his application for benefits with KPERS, he gave a selective waiver of the psychotherapist-patient privilege.

Defendant made the tactical decision to disclose information on confidential psychotherapy sessions in an attempt to obtain disability benefits from the State of Kansas. He cannot now invoke

---

[2] The government also asserts that defendant waived the privilege as to the documents which he showed the CI. Because no privilege attached as to defendant's statements to the CI or as to the documents which he showed the CI in connection with his application for benefits with KPERS, defendant waived any privilege which otherwise applied to the documents which he disclosed to the CI.

the psychotherapist-patient privilege to bar the federal government from using the same information to show that he committed a crime. "The [patient] cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality as to others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." In re Columbia/HCA Healthcare Corp. Billing Practices Litig. ("Columbia/HCA Healthcare"), 293 F.3d 289, 303 (6th Cir. 2002) (declining to adopt selective waiver of attorney-client privilege) (citation omitted);[3] see also Burden-Meeks v. Welch, 319 F.3d 897, 899 (7th Cir. 2003) (knowing disclosure to third party almost invariably surrenders privilege with respect to world at large; selective disclosure is not an option); Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1427 (3d Cir. 1991) (under traditional waiver doctrine, voluntary disclosure to third party waives attorney-client privilege even if third party agrees not to disclose communications to anyone else); S.E.C. v. Lavin, 111 F.3d 921, 933 (D.C. Cir. 1997) (prohibition against selective disclosure of confidential materials derives from appropriate concern that parties do not employ privileges both as sword and shield, selectively disclosing privileged communication to gain advantage in litigation) (marital privilege); People v. Bloom, 85 N.E. 824, 826 (N.Y. 1908) (there can be no disclosure of that which is already known; when secret is out, it is out for all time, and cannot be caught again like a bird, and put back in cage) (physician-patient privilege). Because defendant voluntarily submitted an application for benefits which included his mental health records to a third party, he has waived the psychotherapist-patient privilege as to those

---

[3] In analyzing the breadth of the privilege and scope of the waiver, courts have often analogized the psychotherapist-patient privilege to the attorney-client privilege. In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 76 (1st Cir. 1999) (Jaffee justified psychotherapist-patient privilege in terms parallel to those used for attorney-client privilege), cited in defendant's Sealed Reply To Government's Response Re: Privilege (Doc. #76) at 12.

-7-

records. See United States v. Brock, --- F.3d ----, 2013 WL 3887091, at *4 (7th Cir. July 30, 2013) (waiver of marital communications privilege if holder intends to disclose privileged material even without realizing impact of disclosure on privilege) (citation omitted); People v. Santiago, 326 N.Y.S.2d 332, 334 (N.Y. City Crim. Ct. 1971) (waiver of marital privilege once given continues as to all future actions); People v. Bloom, 85 N.E. at 826 (waiver of physician-patient privilege by testimony in civil action also applied to subsequent criminal trial).

The Court declines to adopt any form of selective waiver in this case. In the context of the attorney-client privilege, the Eighth Circuit has adopted a selective waiver which allows a corporation to voluntarily disclose privileged documents in response to a government agency subpoena without waiving any privilege as to subsequent proceedings. See Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1978) (en banc) (response to SEC subpoena). The Eighth Circuit reasoned that declining to recognize such a waiver "may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers." Id. Several circuits initially recognized the possibility of a modified version of the selective waiver doctrine when the corporation and the investigating agency had a confidentiality agreement. United States Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1127-28 (7th Cir. 1997); United States v. Billmyer, 57 F.3d 31, 37 (1st Cir. 1995); In re Steinhardt Partners, L.P., 9 F.3d 230, 236 (2d Cir. 1993). More recently, the Tenth Circuit and other circuit courts have rejected the selective waiver doctrine even where the parties had a confidentiality agreement. Qwest Communications, 450 F.3d at 1192 (10th Cir.); In re Pac. Pictures Corp., 679 F.3d 1121, 1128-29 (9th Cir. 2012); Columbia/HCA Healthcare, 293 F.3d at 303 (6th Cir.); see also Gruss v. Zwirn, No. 09 Civ. 6441,

2013 WL 3481350, at *11 (S.D.N.Y. July 10, 2013) (while some 20 years ago, Second Circuit suggested possibility privilege could be preserved with confidentiality agreement, more recent circuit court decisions have not permitted parties who produce documents to adverse government agency to assert attorney-client privilege as to those same documents when demanded by a third party in unrelated litigation). The Ninth Circuit has recently noted that given that Congress has declined to broadly adopt a new privilege to protect disclosure of attorney-client privileged materials to the government, courts should not do so. In re Pac. Pictures Corp., 679 F.3d at 1127-28 (theory initially adopted by 8th Circuit but has been rejected by every other circuit to consider issue) (citing Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence, 154 Cong. Rec. H. 7817 (2008), reprinted in Fed. R. Evid. 502 addendum to comm. n subdivision (d), which notes that Rule 502 "does not provide a basis for a court to enable parties to agree to a selective waiver of the privilege, such as to a federal agency conducting an investigation").

The Tenth Circuit, like other circuit courts,[4] has not foreclosed the possibility of selective waiver in an appropriate case, but it has criticized the general concept of a selective waiver of attorney-client privilege:

> Keeping these precepts in mind, and having considered the purposes behind the attorney-client privilege and the work-product doctrine as well as the reasoned opinions of the other circuits, we conclude the record in this case is not sufficient to justify adoption of a selective waiver doctrine as an exception to the general rules of waiver upon disclosure of protected material. Qwest advocates a rule that would preserve the protection of materials disclosed to federal agencies under agreements which purport to maintain the attorney-client privilege and work-product protection but do little to limit further disclosure by the government. The record does not establish a need for a rule of selective waiver to assure cooperation with law enforcement, to further the purposes of the attorney-client privilege or work-product

---

    [4]    See, e.g., Dellwood Farms, 128 F.3d at 1227-28; In re Steinhardt Partners, 9 F.3d at 236.

-9-

doctrine, or to avoid unfairness to the disclosing party. Rather than a mere exception to the general rules of waiver, one could argue that Qwest seeks the substantial equivalent of an entirely new privilege, i.e., a government-investigation privilege. Regardless of characterization, however, the rule Qwest advocates would be a leap, not a natural, incremental next step in the common law development of privileges and protections. On this record, "[w]e are unwilling to embark the judiciary on a long and difficult journey to such an uncertain destination." Branzburg v. Hayes, 408 U.S. 665, 703, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972).

Qwest Communications, 450 F.3d at 1192.

Defendant's submissions to a state agency including his therapist's rebuttal report merely reflect communications with the government and are not protected by the psychotherapist-patient privilege. See Columbia/HCA Healthcare, 293 F.3d at 302 (psychotherapist-patient privilege is "not designed to protect conversations between [patient] and Government or other adverse party;" rather, it pertains only to conversations between the patient and his or her therapist). At least one court has found that an individual who waives the psychotherapist-patient privilege by submitting a claim for disability benefits to the Veteran's Administration ("VA") cannot later assert the privilege to block a criminal investigation of potential fraud in the application process. See In re Grand Jury Investigation No. 99-671, 114 F. Supp.2d 1054, 1055-56 (D. Or. 2000). Magistrate Judge Thomas M. Coffin of the United States District Court for the District of Oregon rejected the individual's claim that the VA, like a hospital, maintains records generated by a patient's treating physician but is not free to release them to the public. See id. Judge Coffin noted as follows:

> Doe was not agreeing to release records to the VA for the purpose of obtaining medical care or suitable treatment for his condition. He was submitting the records in support of his claim for monetary benefits. This is no different than submitting medical records to a tortfeasor's insurance carrier in connection with a demand for damages associated with bodily injuries caused by an automobile accident. The carrier is entitled to thoroughly review the claim, and if it suspects "Whiplash Willy" fakery, to turn the records over to the police for a fraud investigation. Doe cannot selectively use his treating psychotherapist's records to pursue monetary benefits, and then invoke the privilege to bar a thorough investigation into the accuracy of the diagnosis at issue and the truth or falsity of the representations that led to the

-10-

diagnosis.

Id. Here, in a similar manner, defendant cannot selectively use his treating psychotherapist's records (including documentation of threats which he made) to obtain disability benefits and then invoke the psychotherapist-patient privilege to support his defense in this criminal matter that he did not make such threats. The psychotherapist-patient privilege was not intended to be manipulated in this manner.[5] See Columbia/HCA Healthcare, 293 F.3d at 302 (any form of selective waiver, even that which stems from confidentiality agreement, transforms attorney-client privilege into manipulative device); In re Steinhardt Partners, 9 F.3d at 235 (selective assertion of privilege should not be merely another brush on attorney's palette, utilized and manipulated to gain tactical or strategic advantage).

Defendant maintains that under the Kansas Open Records Act, K.S.A. § 45-221(a)(3), he had a statutorily protected reason to believe that his mental health records which he submitted to KPERS would not be re-disclosed to others. The Kansas Open Records Act exempts from disclosure

---

[5] Several courts have found selective waiver in the context of the testimonial privilege against self incrimination under the Fifth Amendment. See, e.g., United States v. Rivas-Macias, 537 F.3d 1271, 1280 (10th Cir. 2008) (witness testimonial waiver of Fifth Amendment privilege only effective if it occurs in same proceeding in which party desires to compel witness to testify); United States v. Becker, No. 10-40077-02-JAR, 2011 WL 836743, at *4 (D. Kan. Mar. 4, 2011) (no waiver in federal criminal proceeding based solely on waiver in state court aid-in-execution hearing because it was not in same proceeding); United States v. Cain, 544 F.2d 1113, 1117 (1st Cir. 1976) (hornbook law that waiver is limited to particular proceeding in which witness appears); United States v. Goodman, 289 F.2d 256, 259 (4th Cir.), vacated and remanded on other grounds, 368 U.S. 14 (1961). Selective waiver in this context appears to be based on the special importance of the Constitutional protection against self incrimination and not a general principle which should readily be applied to other privileges. Courts must "indulge every reasonable presumption against" a testimonial waiver of the Fifth Amendment privilege, Rivas-Macias, 537 F.3d at 1280 (citation omitted), whereas courts strictly construe evidentiary privileges and accept them only to the very limited extent that excluding relevant evidence "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel, 445 U.S. at 50 (quotation and citation omitted). See generally Columbia/HCA Healthcare, 293 F.3d at 302 (as part of criticism of Eighth Circuit adoption of selective waiver, noting that Eighth Circuit relied on two cases which pertained to Fifth Amendment, not attorney-client privilege.)

requirements "[m]edical, psychiatric, psychological or alcoholism or drug dependency treatment records which pertain to identifiable patients." K.S.A. § 45-221(a)(3). The fact that the Kansas Open Records Act exempts mental health records from disclosure requirements does not mean that such records are privileged in a separate legal proceeding. Doe v. Lyons, No. Civ. A. 96-0341, 1996 WL 751531, at *3 (Mass. Super. Dec. 23, 1996) (fact that legislature has designated particular type of report not to be "public" does not mean that legislature also has circumscribed a litigant's right to access report under civil discovery rules); Boston Police Superior Officers Fed'n v. Boston, 608 N.E.2d 1023 (Mass. 1993) (public records law does not restrict commission's power to subpoena police files); Martinelli v. District Court, 612 P.2d 1083, 1093-1094 (Colo. 1980) (en banc) (statute exempting police department internal investigative files from public disclosure under state open records law does not create privilege which removes such documents from ambit of civil discovery). The Kansas Open Records Act requires disclosure of records "to the extent disclosure is otherwise required by law," K.SA. § 45-221(a), which appears to contemplate disclosure of documents in response to a subpoena.[6] See Laxalt v. McClatchy, 809 F.2d 885, 888 (D.C. Cir. 1987) (in light of exception for disclosure "pursuant to the order of a court of competent jurisdiction" under 5 U.S.C. § 552a(b)(11), Privacy Act does not create any additional privileges that would collide with federal civil rules of discovery); see also John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989) (Freedom of Information Act not intended to supplement or displace rules of discovery); Kerr v. United States Dist. Court for N. Dist. of Cal., 511 F.2d 192 (9th Cir. 1975) (exceptions to disclosure in Freedom of Information Act not intended to create evidentiary privileges for civil discovery);

---

[6] Although not dispositive of the legal issue, the Court notes that in response to a subpoena, KPERS gave the United States Attorney the documents related to defendant's application for benefits, apparently without objection. See Government's Response To Defendant's Invocation Of Privileges (Doc. #69) filed August 19, 2013 at 2.

Tighe v. Honolulu, 520 P.2d 1345, 1348 (Haw. 1974) (broad discovery granted to litigants under civil rules cannot be said to be limited by terms of charter provision directed toward regulation of entirely different situation of general exploration of public records by citizen during general business hours).

Courts have consistently held that mental health records lose their privileged status if the patient understands that they will be disclosed to a third party such as a current or potential employer. See Estate of Turnbow v. Ogden City, 254 F.R.D. 434 (D. Utah 2008) (letter evaluation from mental health professional not privileged because defendant knew that evaluation would be submitted to his employer for review as part of application process); Doe v. Ensey, 220 F.R.D. 422, 427 (M.D. Pa. 2004) (priests did not have expectation of privacy in psychological evaluations which were conducted at request of their employer); Scott v. Edinburg, 101 F. Supp.2d 1017, 1020 (N.D. Ill. 2000) (no psychotherapist-patient privilege existed because prior to evaluation, police officer was informed that evaluation and testing results would be reviewed by police chief and psychologist's written report could be subpoenaed in lawsuit); Kamper, 182 F.R.D. at 599 (no privilege because police officer knew that his mental health evaluations would be reported to his employer and thus had no reasonable expectation of confidentiality regarding his communications with therapist); Barrett v. Vojitas, 182 F.R.D. 177, 179 (W.D. Pa. 1998) (post-shooting counseling reports regarding police officer non-privileged because reports submitted to public officials); Siegfried v. Easton, 146 F.R.D. 98 (E.D. Pa. 1992) (psychological records not privileged in later police brutality case because records were supplied to police department when defendant interviewed for position). Many of the employers (primarily police departments) in the cases cited above were presumably subject to policies which did not require public disclosure of medical or mental health information. Even so, the courts found waiver because the individual had agreed to

disclose confidential mental health information to a third party entity.[7] The fact that the third party entity in this case is a government agency which is subject to the Kansas Open Records Act does not compel a different result.

In support of defendant's claim of privilege, he notes that one court has held that an application for disability benefits with the Social Security Administration ("SSA") does not waive the psychotherapist-patient privilege in subsequent proceedings. See Awalt v. Marketti, 287 F.R.D. 409 (N.D. Ill. 2012). In Awalt, the estate and widow of a prisoner filed a civil rights and wrongful death action against jail personnel and medical care providers who serviced the jail. See id. at 411. Defendants sought to compel documents related to psychological evaluations of the prisoner by the SSA. See id. Defendants claimed that the prisoner had waived the psychotherapist-patient privilege by applying to the SSA for benefits. See id. at 420. The court rejected defendants' assertion of waiver as follows:

> Mr. Awalt's disclosure of information to the SSA took place with all of the protections of the Privacy Act of 1974, 5 U.S.C. § 551 et seq., in place. The Privacy Act guarantees that information disclosed in support of an application to the SSA for benefits will never be disclosed beyond the agency without the express consent of the applicant. See 5 U.S.C. § 552a(b). Thus, the Privacy Act is just the sort of "agreement . . . not to spread [privileged information] further" that the Seventh Circuit was describing in Dellwood Farms. Therefore, Mr. Awalt's application for benefits did not waive the psychotherapist-patient privilege that protects psychiatric records that are a part of Mr. Awalt's agency file because the SSA records were provided to the agency by Mr. Awalt against the backdrop of the protections provided by the Privacy Act of 1974.

Id. at 420.

The Court declines to follow Awalt in the context of this criminal proceeding. Awalt relies

---

[7] Defendant's subjective intent is not dispositive. See 2 McCormick on Evidence § 93, at 371-72 (5th ed. 1999) (waiver in situations in which forfeiture of privilege was not subjectively intended by holder is consistent with view that essential function of privilege is to protect confidence which, once revealed by any means, leaves privilege with no legitimate function to perform).

on the reasoning of the Seventh Circuit in Dellwood Farms which at least two circuit courts have rejected and the Tenth Circuit has not expressly adopted. In re Pac. Pictures Corp., 679 F.3d at 1127-28; Columbia/HCA Healthcare, 293 F.3d at 302-08. The Privacy Act of 1974 provides that except under certain limited conditions, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). Awalt did not address the exceptions for disclosure under the Privacy Act including one which permits disclosure of information "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11).[8] Finally, Awalt relies on the concept of selective waiver discussed in Dellwood Farms, supra, which involved a government assertion of the law enforcement privilege as to certain tapes it played for corporate defense counsel to persuade the company to plead guilty. See Dellwood Farms, 128 F.3d at 1124. The court adopted a selective waiver theory because no evidence showed either that "the government was acting in bad faith or that the plaintiffs in the present suits were hurt-and, to repeat, the government is not trying to take advantage of an adversary-interfering with a criminal investigation would be an excessive punishment." Id. at 1127. Even if the Tenth Circuit followed the reasoning of Dellwood Farms, the Court would not find selective waiver here because the Kansas Open Records Act is not an

---

[8] Although Awalt involved disclosure to a private party, the disclosure by KPERS was to another government agency. The Privacy Act contains an exception which permits a government agency to disclose specific patient records to another government agency for a civil or criminal law enforcement activity. See 5 U.S.C. § 552a(b)(7) (permitting disclosure "to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought.).

-15-

"agreement" to maintain confidentiality and no evidence suggests that defendant ever sought any assurance from KPERS to prevent further disclosure of his mental health records.

The Court finds that defendant has waived the psychotherapist-patient privilege as to all documents which he submitted to KPERS in connection with his application for disability retirement benefits. Accordingly, the AUSA who is assigned to the privilege issue may disclose to government trial counsel the documents Bates numbered KPF 000001-000156.

### III. Attorney-Client And Physician Patient Privileges

Defendant initially asserted that the documents Bates numbered A/C 000003-112 are protected by the attorney-client privilege and that the documents Bates numbered MD 000033-44 and COMP 000044-139 are protected by physician-patient privilege. As to the attorney-client privilege, the government argues that defendant has failed to specify why these documents are subject to the privilege and the documents themselves do not reveal how the elements of the privilege are satisfied. As to the physician-patient privilege, the government argues that federal common law does not include such a privilege, which is a statutory creation by the states. See Whalen v. Roe, 429 U.S. 589, 602 n.28 (1977). In his reply and surreply, defendant has offered no response. For substantially the reasons stated in the Government's Response To Defendant's Invocation Of Privileges (Doc. #69), the Court overrules defendant's assertion of attorney-client privilege and physician-patient privilege. The AUSA who is assigned to the privilege issue may disclose to government trial counsel the documents Bates numbered A/C 000003-112, MD 000033-44 and COMP 000044-139.

### IV. Waiver Of Privilege Based on Defendant's Use Of Work Computer

Defendant has asserted that certain documents on his workplace computer at the Raytown C-2 School District in Raytown, Missouri are protected by the psychotherapist-patient

privilege, attorney-client privilege and physician-patient privilege. The government asserts that defendant waived his assertion of privilege as to documents on his workplace computer.[9]

In determining whether a privilege applies to materials kept on a workplace computer, courts consider the following factors:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

In re Asia Global Crossing, Ltd., 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005); see In re Reserve Fund Secs. & Derivative Litig., 275 F.R.D. 154, 159 (S.D.N.Y. 2011). The majority view is that the employees do not waive the privilege in material on their work computer simply because the employer can monitor their communications.

Defendant did not waive any privilege as to the materials at bates number COMP 000001-141 based on his use of a workplace computer. See United States v. Hatfield, No. 06-CR-0550, 2009 WL 3806300 at *8 (E.D.N.Y. 2009) ("After applying these four factors, or privilege principles generally, most - but not all - courts have held that employees do not waive privilege simply by maintaining documents on a company computer system."); United States v. Long, 64 M.J. 57, 64 (C.A.A.F. 2006) (defendant had reasonable expectation of privacy in work computer where policy regarding personal e-mails had always been lenient and such use of network

---

[9] As noted, defendant has waived any privilege as to documents Bates numbered COMP 000016-000027 and 000033-000139 by his disclosure of these documents to the CI. In addition, defendant has not presented any argument to substantiate his claim of physician-patient privilege as to documents Bates numbered COMP 000044-000139. The government has agreed to forego disclosure of documents Bates numbered COMP 000001-000003. Accordingly, it appears that the relevant documents for which defendant has asserted a valid claim of privilege are Bates numbered COMP 000004-000015, COMP 000028-000032 and COMP 000140-141.

was considered authorized). The Court finds that defendant had a reasonable expectation of privacy in the documents which were on his workplace computer. The Technology Usage Policy for the Raytown School District does not prohibit personal use of the technology equipment. The government has not shown that defendant's use of the computer constituted "objectionable use" or that his use was otherwise subject to actual monitoring because of the frequency of his personal use or any complaint. The Policy and Banners do not specify that the District actually monitored the use of technology equipment. Based on the limited record and absent testimony about the District's actual implementation of its Technology Usage Policy, the Court declines to find that defendant has waived any privilege by his use of a workplace computer.

**IT IS THEREFORE ORDERED** that defendant's <u>Renewed Motion To Invoke Privilege As To Psychotherapist-Patient Records</u> (Doc. #63) filed August 16, 2013 be and hereby is **SUSTAINED in part**. The Court sustains defendant's motion on the limited ground that defendant did not waive any otherwise applicable privilege by his use of a workplace computer. Defendant's motion is otherwise overruled.

Dated this 5th day of September, 2013 at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge